## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**LORRAINE TOWNSEND,**               :
:
             **Plaintiff,**          :
:
             **v.**                 :          **Civil Action No. 10-218 (ESH)**
:
**RAY MABUS, Secretary,**        :
**DEPARTMENT OF THE NAVY,**   :
:
             **Defendant.**       :

## DEFENDANT DEPARTMENT OF THE NAVY'S
## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
## MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

Defendant, Ray Mabus as the Secretary of the Department of the Navy and the

Department of the Navy (hereinafter "DON" or "Navy") submits this memorandum of points and

authorities in support of its Motion to Dismiss or, Alternatively, for Summary Judgment.  The

plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42

U.S.C. § 2000e, *et seq.,* claiming discrimination based on age, hostile work environment and in

retaliation for protected activity.[1]  *See* Complaint, ¶¶ 2, 17-19 and 27.   Apparently, the plaintiff

is primarily complaining that she was removed from federal service after the Navy determined

that she had performed at an unacceptable level for a sustained period.  MSPB Pre-hearing

Order, Exhibit 22.

---

[1]Although the plaintiff does not cite the Age Discrimination in Employment Act
(hereinafter "ADEA"), 29 U.S.C. § 621, et seq., her allegations arise from her challenge in the
Merit Systems Protection Board (hereinafter "MSPB"), where she alleged that she was
discriminated against based, *inter alia*, on her age, a claim that would be pursuant to the ADEA.
MSPB Prehearing Order, Exhibit 22 at 2.

Although the plaintiff's complaint is not entirely clear as to her precise claims, based on a review of the complaint and the Navy's understanding of the administrative proceedings relating to the plaintiff and her claims, it appears that the plaintiff is raising the following claims: (1) a breach of settlement claim arising from the settlement agreement between the plaintiff and the Navy before the EEOC, Complaint, ¶ 16; (2) a discrimination claim based on age and retaliation in connection with her removal, Complaint, ¶¶ 26-27; (3) a hostile work environment claim in connection with her 2008 interim and final performance rating based on age and retaliation, Complaint, ¶ 19; and (4) various Constitutional claims arising from the administrative process. Complaint, ¶¶ 21-23, 25 and 28.

As explained below, the plaintiff's claims should be dismissed or, alternatively, summary judgment granted in favor of the Navy.   The Navy has not waived sovereign immunity with regard to the breach of settlement agreement claim or as to her various Constitutional challenges. This Court does not have jurisdiction as to those claims.   As to her removal, judgment should be granted in the Navy's favor because the plaintiff was removed for legitimate, non-discriminatory reasons, i.e., her failure to perform at an acceptable level.  Finally, summary judgment should also be granted as to her hostile work environment claim because she has failed to establish a *prima facie* case because the action about which she is complaining, i.e., her 2008 performance rating, is a normal, workplace personnel matter which does not constitute a series of events, much less a series of severe and pervasive actions related to her protected status, her age or prior EEO activity.  The plaintiff's claims should fail.  Judgment should be granted in the Navy's favor.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  GENERAL BACKGROUND

The plaintiff was employed by the Navy as a Team Leader Auditor in the Naval Audit Service (hereinafter "NAS").  Complaint, ¶ 4; SF 50, Exhibit 2.  She was employed from July 20, 1986 to June 26, 2009. Complaint, ¶ 2, 6.  From July, 2000 until she left, the plaintiff was a GS 13, auditor, which is the equivalent of a Senior Team Leader.  Complaint, ¶ 2; Notice of Proposed Removal, Exhibit 19 at 1.  In January, 2007, the Naval Audit Service converted to the National Security Personnel System hereinafter (hereinafter "NSPS").  *Id*.  Once they converted, the plaintiff's position was changed to Team Leader, YA-511-02.  SF 50, Exhibit 2.

By 2009, she had been an Audit Team Leader for over 8 years.  Notice of Proposed Removal, Exhibit 19.  Auditors work in teams.  *Id*.  As a Team Leader, the plaintiff was expected to work independently with little or no supervision, and performs the most complex work.  *Id*. She was expected to read and understand the audit guide quickly and complete the work, at a minimum, by established deadlines.  *Id*.  As a Team Leader with her level of experience, she was also expected to help train and to be a role model for less experienced auditors on her team.  *Id*.

### II.  2008 EEO SETTLEMENT AGREEMENT

#### A.  Proceedings Leading Up to the EEO Hearing and Agreement

Between February 2005 and June 2006, the plaintiff filed a series of complaints with the Navy under Title VII, claiming discrimination based on race (African American), age, and reprisal for prior EEO activity (in 2000) for some and reprisal alone for others.  EEO Prehearing Order, Exhibit 3.  The subjects of those claims were her various performance appraisals for ratings periods covering 2005 and 2006 as well as her non-selection for various GS 14 positions.

*Id*; *see also* Complaint, ¶¶ 7-10.

The above referenced complaints were consolidated for a hearing before the Equal

Employment Opportunity Commission (hereinafter "EEOC").  Prehearing Order, Exhibit 3.  The

Administrative Judge determined that the following claims were to be heard:

      (1) whether the Navy discriminated against the plaintiff on the basis of

reprisal for prior EEO activity when: (a) she was denied a performance award for

FY 2004; (b) her FY 2005 performance appraisal contained allegedly negative

supervisory comments with the purpose of denying her a monetary award and

promotion to a GS-14 position; and (c) she was given an unsatisfactory rating of 1

for her FY 2007 performance appraisal; and

      (2) whether the Navy discriminated against the plaintiff based on her race

(Negro African), age (then 58), and reprisal for prior EEO activity when (a) she

was not selected in February 2005 for a GS 14 Supervisory Auditor position, (b)

she was not selected in March 2005 for a GS 14 Supervisory Auditor position and

(c) between January and March, 2006, she was not selected for any GS-14

Auditor positions.

*Id*.

## B.  Terms of the Agreement

In June 2008, the hearing before the EEOC administrative judge began.  *Id.*; Hearing,

Exhibit 4.  On July 10, 2008, the fourth day of the hearing, a settlement agreement was reached

and entered on the record.  Transcript, July 10, 2008, Exhibit 5.  The agreement provided that for

six months from July 10, 2008 (to January 2009), the plaintiff must not "raise her voice to her

coworkers or her superiors, that she will not contradict her superiors in front of the auditees, and that she will turn in all of her assignments on time and in accordance with the Naval Audit Service audit handbook." *Id.*   If the plaintiff's actions were consistent with the stipulated behavior for the complete six months following the date of the agreement, her rating for the calendar year 2007 would be retroactively adjusted, and she would be given "a rating of two [satisfactory] for calendar year 2007, and a cost of living adjustment that goes with the rating, plus another one percent that gives her the full cost of living for that period, which would start when it normally starts for other people." *Id.*  Based on the settlement, the EEOC dismissed the matter.  Order of Dismissal, Exhibit 6.

### C.  <u>The Plaintiff's Breach of the Settlement Agreement</u>

Following the stipulated agreement, the plaintiff's conduct and her performance in the latter part of 2008, did not comply with the terms of the agreement.  Performance appraisal, Attachment 2 to Notice of Proposed Removal, Exhibit 19; Final Determination of Alleged Breach, Exhibit 8.  During that period, the plaintiff missed deadlines and, despite her having 20 years of experience and having been given training in January, she showed an inability to pick up new ideas and concepts.  Notice of Proposed Removal, Attachment 2, Exhibit 19.  On more than one occasion, the plaintiff had confrontations with other individuals, e.g., her supervisor and colleagues, in which she raised her voice.  Final Determination of Breach, Exhibit 8 and attachments thereto.

Because the plaintiff did not fulfill her obligations under the settlement agreement, the Navy did not change the plaintiff's 2007 rating.   The plaintiff, nonetheless, sent notice of an alleged breach of the agreement on February 6, 2009.  EMAIL notice, Exhibit 7.  The plaintiff,

nonetheless claimed that the Navy had breached the agreement by not changing her performance

assessment from a level 1-unacceptable to a level 2-fair, and, in turn had not given her a pay

award as of January, 2009.  *Id.*[2]

The Navy responded to the plaintiff's claim and advised the plaintiff that the plaintiff had

not carried out her obligations under the agreement because she had raised her voice to

coworkers, had contradicted her superiors in front of auditees and had not completed

assignments in a timely fashion in accordance with Naval Audit handbook requirements.  Exhibit

8.  As such, the Navy determined that the plaintiff had not satisfied the predicate conditions so

that it had no duty to adjust her rating.  *Id.*

### D.   <u>The Plaintiff's Appeal to the EEOC of the Navy's Decision That It Had Not Breached the Agreement</u>

Subsequently, the plaintiff appealed the Navy's determination that it had not breached the

agreement to the Office of Federal Operations of the Equal Employment Opportunity

Commission (hereinafter "EEOC").  Complaint, ¶ 16.  The EEOC denied the plaintiff's appeal.

EEOC Decision, Exhibit 9.   The EEOC explained that, despite having agreed to the terms in

open court after having an opportunity to address all questions about them, the plaintiff decided

she did not like the terms.  *Id.*  The EEOC found that the plaintiff was well aware of her

obligations regarding them at the time she entered into the agreement.  *Id.*   The EEOC found

that the plaintiff had failed to provide documentation supporting her claims that she had

---

[2]Under NSPS, individuals that received a rating of "2-fair" for the rating period ending 9/30/08, would have gotten a performance pay increase effective in January, 2009.  Exhibits 17 and 18. Individuals rated at level "1-unacceptable" did not.  *Id.*  It was when the plaintiff noticed she did not receive any increase that she notified the Navy that she believed they had not changed her rating as set forth in the agreement and, thus, allegedly had breached the agreement. Exhibit 7.

complied with the "good behavior" clause or to rebut the Navy's evidence.  *Id.*  The EEOC

concluded that the plaintiff had breached the agreement.  *Id.*  As such, the Navy was not

obligated to comply with the provision of the agreement requiring it to change the plaintiff's

performance rating.  *Id.*

The plaintiff moved for reconsideration, claiming that the EEOC's decision violated her

"constitutional rights of due process."  Reconsideration Request, Exhibit 10.  The EEOC rejected

this argument and found that the plaintiff had failed to meet the criteria of 29 C.F.R. §

1614.405(b), which governs reconsideration of decisions.  Denial of Reconsideration, Exhibit 11.

## III.  THE PLAINTIFF'S 2008 EEO CLAIM

In May 2008, a month before the hearing on the above-referenced EEO claims was to

begin, the plaintiff contacted an EEO counselor claiming there was alleged discrimination in

connection with her interim rating for the period October 1, 2007 through September 30, 2008.

EEO Complaint, Exhibit 12.  Subsequently, following the end of the rating period, the plaintiff

filed an administrative EEO complaint in connection with that rating.  Id.  The plaintiff claimed

that the rating and actions and events on which her supervisor relied for the rating created a

hostile work environment.  *Id.*

On March 12, 2009, the Navy acknowledged the plaintiff's complaint, assigning it case

no. DON 08-62695-02451.  Acknowledgement Letter, Exhibit 13.   The Navy dismissed the

claim of discrimination based on age at that time.  *Id.*  The Navy accepted the plaintiff's

retaliation claim as to the plaintiff's receipt in May 2008 of an unsigned NSPS mid-year

assessment and was given a rating of "2-Fair."and comments made on the plaintiff's mid-year

assessment were unsubstantiated and inconsiderate of her learning curve and resulted in

disparate treatment and a hostile work environment claim.  *Id*.  By the time the investigation

was conducted, the rating had become final so that the investigation actually was of the

plaintiff's claim as to the final rating.  ROI Cover, Exhibit 14.  As identified therein, the claim(s)

investigated was whether the plaintiff was subject to discrimination based on retaliation and age

when she was given a final assessment rating of "1-unacceptable" for the period October 1, 2007

through September 30, 2008.  *Id*.

## IV.  THE PLAINTIFF'S REMOVAL FOR UNACCEPTABLE PERFORMANCE AND APPEAL TO THE MSPB

### A.  <u>NSPS Rating System</u>

In January 2007, the Naval Audit Service converted to the National Security Personnel

System (hereinafter "NSPS).  Notice of Proposed Removal, Exhibit 19.  Subchapter A of the

National Defense Authorization Act of 2004 created the National Security Personnel System or

NSPS. 117 Stat. 1621-1633, codified at 5 U.S.C. §§9901- 9904. Under this system, the Secretary

of Defense was authorized, in regulations prescribed jointly with the Office of Personnel

Management (OPM), to create a human resources management system "for some or all the

organizational or functional units of the Department of Defense." 5 U.S.C. § 9902(a).   This new

system linked pay to performance.  5 U.S.C. §9902(b)(6)(I).

NSPS represented a fundamental change in the way DoD employees were rated and

compensated.   As delineated in notes accompanying the initial rules concerning NSPS, "NSPS

is designed to promote a performance culture in which the performance and contributions of the

DoD civilian workforce are more fully recognized and rewarded. The system offers the civilian

workforce a contemporary pay-banding construct, which will include performance-based pay. As

the Department moves away from the General Schedule system, it will become more competitive

in setting salaries and it will be able to adjust salaries based on various factors, including labor market conditions, performance, and changes in duties."  70 *Fed. Reg.* 6618 (November 1, 2005).

NSPS implementing provisions governing performance were contained in Chapter 1940 of Department of Defense Instruction DoD 1400.25-M effective April 28, 2006.  Exhibit 18 hereto.  In addition, guidelines were also issued regarding the implementation of NSPS.  Interim Guidance, April 2006, Exhibit 17.  The provisions of DoN CHRM, Subchapter 432.1, "Actions Based on Unacceptable Performance" of August 2005, including that performance based actions could only be based on an employee's performance for one year prior to the proposed action, did not apply to employees covered by NSPS.  Interim Guidance, Exhibit 17 at 1.

Under NSPS, employees' performance was assessed annually based on performance plans which included job objectives.  Section SC1940.5, Exhibit 18; Interim Guidance, at 5, Exhibit 17; Performance Assessments, Attachments 1 and 2, Notice of Proposed Removal, Exhibit 19.  The employee would be rated on her performance of each job objective on a scale of 1 to 5.  Section SC 1940.10.3.2, Exhibit 18.  Unacceptable or level 1 meant that the "[e]mployee failed to achieve the assigned job objective *or* failed in the performance of a single assignment where such failure had a significant negative impact on accomplishment of the mission or where a single failure resulted in or could result in death, injury, breach of security, or great monetary loss.  Section SC 1940.10.3 and Table SC 1940-1, at 16 and Appendix 5 thereto, Exhibit 18; *see also* Complaint, ¶ 15.  "Role model" or level 5 meant that the "[e]mployee exceeded the assigned job objectives at a level of performance equal to, or above, the Level 5 performance indicator." Section SC 1940.10.3 and Appendix 5 thereto, Exhibit 18.

There were some notable features of the NSPS rating system relating to performance, which is not governed by Chapter 432 of the Department of the Navy Human Resources Manual. Exhibit 17 at 1.  First, if deficiencies in performance were identified, the supervisor was to immediately address those deficiencies with an employee.  Section SC 1940.8.1. - SC 1940.8.3, Exhibit 18.  Second, a formal performance improvement period ("PIP") did not have to be established before initiating an adverse action.  Section SC 1940.8.4, Exhibit 18.  Third, if the employee was rated a "1" or at the "unacceptable" level on any job objective, the adjusted rating for that period would be a "1" or "unsatisfactory."  Section SC 1940.10.5.2.1, Exhibit 18. Fourth, an employee's attitude, actions and behaviors can be considered in an employee's performance rating.  Section SC 1940.8.4.4, Exhibit 18.  Finally, adverse actions based on performance can be taken independent of the processes and procedures for appraising performance and Chapter 432 of the Department of the Navy Manual does not apply.  Interim Guidance at 12, Exhibit 17; Sections SC 1940.8.2 and SC 1940.1.3, Exhibit 18.

**B.  The Plaintiff's Unacceptable Performance**

The plaintiff's performance was unacceptable for the two rating periods as well as the interim rating period leading up to her proposed removal in April 2009.  First, with regard to the rating for the period January 21, 2007 through September 30, 2007, that rating had been "1 - unacceptable."  2007 Performance Assessment, Attachment 1, to Notice of Proposed Removal, Exhibit 19.[3]   That assessment noted, *inter alia*, that the plaintiff had completed only 4 of 8 tasks

---

[3]This is the assessment that was the subject of one of the terms of the July 2008 settlement agreement, i.e., that if the plaintiff did not raise her voice with coworkers and superiors and turned in her assignments on time and in accordance with the Naval Audit handbook, the Navy would change that assessment.  *See* Section II, *supra* and Exhibit 5.   As already discussed, because the plaintiff did not fulfill her obligations under the agreement, the

to which she was assigned.  *Id.*  Of the four she did complete, she did not meet the deadline for completing those four.  *Id.*

Her 2008 rating, which covered the period October 1, 2007 through September 30, 2008, was also "1-unacceptable."  Performance Assessment, October 1, 2007-September 30, 2008, Attachment 2, Notice of Proposed Removal, Exhibit 19.  As explained therein, the plaintiff failed, *inter alia*, to properly analyze projects to identify scoping issue for three projects, and her work papers were not prepared in accordance with the Naval Audit handbook.  *Id.*  In addition, the plaintiff did not display a team-like attitude and was not cooperative in that she argued with team members and individuals at the audit sites.  *Id.*

Finally, her interim rating for the rating period of October 1, 2008, through September 30, 2009, which was completed on March 12, 2009, was also unacceptable.  Interim Appraisal, Attachment 3, Notice of Proposed Removal, Exhibit 19.  As explained therein, the plaintiff continued to miss deadlines and was unable to work independently, despite having over 20 years experience, instead requiring extensive supervision.  *Id.*

C.  **The Plaintiff's Removal**

Because the Navy had concluded that the plaintiff had performed at an unacceptable level for over 2 years, on April 24, 2009, the Navy proposed her removal.  Notice of Proposed Removal, Exhibit 19.   The plaintiff was given an opportunity to and did submit a written response to the proposed removal.  Attachment (i) to Decision on Notice of Proposed Removal, Exhibit 20.  The plaintiff also provided an oral response, where she met with the decision maker.

---

Navy did not change this assessment.  Navy's Determination, Exhibit 8.  The EEOC upheld the Navy's actions, concluding that the plaintiff had breached the agreement.  Exhibit 9.

See Minutes of Oral Reply, Attachment (j) to Decision on Removal, Exhibit 20.  The plaintiff also had the opportunity to provide comments to the Minutes of that Oral Reply for the decision maker's consideration.  Attachment (k) to Decision on Removal, Exhibit 20.

On June 26, 2009, the Navy issued its final decision, removing the plaintiff from her position.  Decision on Removal, Exhibit 20.   As explained therein, the plaintiff was removed based on, *inter alia*, her unacceptable performance over a sustained period, Paragraph a, *id*.; her repeated disagreements with team members and supervisors, Paragraph f, *id*.; and the fact that, despite her over 20 years' experience, the plaintiff's supervisors were required to keep the plaintiff on task and correct her work, Paragraph e, *id.*

**D.  The MSPB Proceedings and Final Decision.**

The plaintiff appealed her removal to the MSPB.  Exhibit 21.  The issues accepted and considered by the MSPB were as follows:

(1) whether the Navy proved by preponderant evidence that the plaintiff engaged in unacceptable performance for a sustained period (3 specifications), including the periods from (i) January 21, 2007 through September 30, 2007, (ii) October 1, 2007, through September 30, 2008, and (iii) October 1, 2008, through September 30, 2009;

(2) whether the Navy proved by preponderant evidence that its choice of the penalty of removal was within the bounds of reasonableness;

(3) whether the plaintiff established the affirmative defense of discrimination based on age by a preponderance of the evidence;

(4)  whether the plaintiff established the affirmative defense of retaliation for prior protected equal employment opportunity (EEO) activity;

(5) whether the plaintiff established by preponderant evidence the affirmative defense of harmful procedural error because the agency failed to comply with the applicable procedural requirements.   Prehearing Order, September 14, 2009, Exhibit 22.

The MSPB conducted an evidentiary hearing on November 9 and 10, 2009.  See Final Decision, Exhibit 23; Hearing Transcripts, Exhibits 25 and 26.  The plaintiff's supervisors who rated her and the official(s) responsible for the decision to remove the plaintiff testified.  Hearing Transcripts, Exhibits 25 and 26.  The plaintiff had the opportunity to testify and to cross examine all the witnesses.  *Id.*

Following the hearing, on December 10, 2009, the MSPB issued its decision.  MSPB Decision, December 10, 2009, Exhibit 23.  The MSPB affirmed the Navy's removal action.  *Id.* The MSPB found that the Navy's decision to remove the plaintiff for her unacceptable performance for a sustained period, was both accurate and reasonable.  According to the MSPB, the record showed that the Navy made numerous attempts to counsel the plaintiff regarding her performance over a two year period.  *Id.* at 5.  The record demonstrated that the Navy rated her work unacceptable for two distinct one-year rating periods, but yet still gave the plaintiff another opportunity to improve her performance.  *Id..*  The evidence included the testimony of three different supervisors with whom the plaintiff had worked over the pertinent period.  *Id.* at 7-8. Each of those individual supervisors rated the plaintiff's performance unacceptable.  *Id.*  In addition to her unacceptable performance, the plaintiff's uncooperative attitude and disruptive behavior towards others, to which there was testimony, also contributed to her unacceptable performance assessment.  *Id.*  The MSPB rejected the plaintiff's claims that the true reason for her removal was discrimination based on age and in retaliation for her prior EEO activity, and

upheld the removal, noting that the Navy's reasons for removing the plaintiff were legitimate and non-discriminatory. *Id.* The MSPB's decision became final on January 14, 2010. *Id.* The plaintiff subsequently filed this action on February 12, 2010. Complaint, Dkt #1.

As explained below, the plaintiff's claims should fail. To the extent the plaintiff is claiming a breach of the settlement agreement and raises Constitutional claims, the Court has no jurisdiction over such claims. Further, summary judgment should be granted regarding her removal because the Navy had legitimate, non-discriminatory reasons for removing the plaintiff, i.e., her unacceptable performance. There is no evidence that such reasons were a pretext for discrimination. Similarly, to the extent there is any separate hostile work environment claim regarding her 2008 performance assessment, that should fail as well because the plaintiff has failed to establish this action is a series of actions that are pervasive based on the plaintiff's protected status or that it is anything other than a normal personnel action.

## APPLICABLE LEGAL STANDARDS OF REVIEW

### I.  MOTIONS TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1)

Pursuant to Fed.R.Civ.P. 12(b)(1), a court must dismiss a case when it lacks subject matter jurisdiction. Jurisdiction is an independent, preliminary issue that is to be resolved before analyzing the merits of the plaintiff's claims. *Greenhill v. Spellings*, 482 F.3d 569, 573 (D.C. Cir. 2007), citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) and *Kidwell v. Dep't of the Army, Board for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 2995): *Franklin-Mason v. Penn*, 616 F. Supp.2d 97, 100 (D.D.C. 2009). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact

and dismissing the cause." *Steel Co.*, 523 U.S. at 95 quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

Plaintiff bears the burden of establishing subject matter jurisdiction. *Shuler v. United States*, 531 F.3d 930, 932, 936 (D.C. Cir. 2008). When a federal court reviews the jurisdictional sufficiency of a complaint, "its task is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Nonetheless, in deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003), quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F.Supp.2d 84, 90 (D.D.C. 2000).; *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002).

## II.  MOTIONS TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the Court should dismiss a claim if the plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), quoting *Twombly*, 550 U.S. at 570; *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007).

In this regard, the Court must construe the factual allegations of the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint.  *Kowal*, 16 F.3d at 1276.  Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id*.

## III.  MOTIONS FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56

The Court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir.1994); *Mills v. Winter*, 540 F. Supp. 2d 178, 183 (D.D.C. 2008).   Under the summary

judgment standard, the moving party bears the "initial responsibility of informing the district

court of the basis for [its] motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits which [it]

believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  In response, the non-moving party must "go beyond the pleadings

and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file,

'designate' specific facts showing that there is a genuine issue for trial." *Id*. at 324.

　　　Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary

judgment. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Holcomb v. Powell*,

433 F.3d 889, 895 (D.C. Cir 2006).  To be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by

sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251(the court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of

law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment

may be granted." *Liberty Lobby*, 477 U.S. at 249-50.

　　　While the movant bears the initial responsibility of identifying those portions of the

record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the

non-movant to "come forward with 'specific facts showing that there is a genuine issue for

trial.'" *Id*. at 587.   The non-moving party's opposition must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

*See* Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324; *Mills*, 540 F. Supp. 2d at 183.   "Mere

allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise

proper motion for summary judgment." *Williams v. Callaghan*, 938 F.Supp. 46, 49

(D.D.C.1996). The adverse party must do more than simply "show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574 (1986).

Factual assertions in the moving party's affidavits may be accepted as true unless the

opposing party submits his own affidavits or documentary evidence to the contrary.  *Neal v.*

*Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); *see also Liberty Lobby*, 477 U.S. at 252; *Laningham*,,

813 F.2d at 1242 (the non-moving party is "required to provide evidence that would permit a

reasonable jury to find" in its favor).   In this regard, the non-moving party may not "replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit,"

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990), but rather must "set forth

specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248. Overall,

to defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of

evidence to support [her] claims." *Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 845 (D.C.

Cir. 2001).

## ARGUMENT

## I.  PLAINTIFF'S CLAIMS REGARDING HER SETTLEMENT AGREEMENT AND HER CONSTITUTIONAL CLAIMS SHOULD BE DISMISSED.

### A.  Plaintiff's Claim Regarding Her Breach of Settlement Agreement Should Be Dismissed Because This Court Lacks Jurisdiction.

This Court is without jurisdiction over the plaintiff's claim that the Navy breached the EEOC settlement agreement.  As the Supreme Court has observed, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003); *see also United States v. Mitchell*, 463 U.S. 202, 212-13 (1983).  Thus, jurisdiction over a suit against the federal government "requires a clear statement from the United States waiving sovereign immunity," and "[t]he terms of consent to be sued may not be inferred, but must be 'unequivocally expressed.'"  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003); *see also Settles*, 429 F.3d at 1105 (waiver "must be unequivocally expressed in statutory text… and will not be implied").   Lack of a valid waiver requires dismissal of the action. *Settles*, 429 F.3d at 1105.  A waiver of sovereign immunity is "strictly construed, in terms of its scope, in favor of the sovereign."  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

The question of jurisdiction arises with regard to the plaintiff's claim, *inter alia*, of a breach of settlement agreement.  Although the only jurisdictional basis cited by the plaintiff for her complaint is Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.*, Complaint, ¶ 2, the plaintiff appears to assert that the Navy breached the settlement agreement that she and the Navy executed in July 2008 at the EEOC hearing.  Complaint, ¶ 16; see also Settlement Agreement, Exhibit 5; Plaintiff's Breach Claim, Exhibit 7.

Because the plaintiff's claim of breach of agreement is strictly a contract claim, Title VII, upon which the plaintiff relies as a basis for this court's jurisdiction, does not provide a basis for this Court's jurisdiction. *See generally Makins v. District of Columbia*, 277 F.3d 544, 546 (D.C. Cir. 2002)(settlement agreements in Title VII cases are generally in the nature of a contract). Nothing in Title VII itself waives sovereign immunity for a claim of breach of a settlement agreement. In fact, the statutory language permitting suit against the United States is contained in 42 U.S.C. § 2000e-16(c), which allows a federal employee to file a civil action within certain time limits after final action (or lack thereof) by the agency or the EEOC "on a complaint of discrimination… brought pursuant to subsection (a) of this section[.]" Subsection (a) in turn bars discrimination in "[a]ll personnel actions affecting employees… in executive agencies[.]" That provision gives jurisdiction to the Court over discrimination claims, which would include any underlying discrimination claims. But, in this case because those claims were settled, those claims are no longer viable Title VII claims. The only issue is whether the settlement agreement or contract remains viable or has been breached. The only conduct at issue is conduct following, not leading up to, the settlement. That does not involve a determination of discrimination. Because Title VII's grant of jurisdiction is for claims involving a determination of discrimination, it does not provide a basis for jurisdiction.

To the extent the plaintiff is relying on the fact that the breach claim is a contract claim, the Court still does not have jurisdiction over it. The basis for jurisdiction over contract claims against the United States is the Tucker Act. 28 U.S.C. § 1346(a) and 28 U.S.C. § 1491. But, the Tucker Act provides that the District Court's jurisdiction over only a limited number of such claims, i.e., where the relief sought does not exceed $10,000. *See* 28 U.S.C. 1346(a). Here, the

plaintiff clearly requests money damages in excess of $10,000, i.e., "back pay, interest on back pay. . .and compensatory damages. . . in the sum of $1,000,000.  Complaint, Prayer for Relief at 9.[4]  Because the plaintiff is requesting far more than $10,000, in relief, i.e., $1,000,000, her claim exceeds this Court's jurisdictional limit for contract claims.  As such, this Court does not have jurisdiction over the plaintiff's breach of settlement agreement claim.

Furthermore, the controlling case law in this Circuit establishes that this Court is without jurisdiction over breach of settlement agreement claims, such as the plaintiff's, where the relief sought exceeds $10,000.  *See Greenhill,* 482 F.3d at 575; *Hansson v. Norton*, 411 F.3d 231, 232 (D.C. Cir. 2005)(claim for breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act); *accord Westover v. United States*, 71 Fed. Cl. 635, 639 (2006). In *Greenhill*, 482 F.3d at 575, the plaintiff, an employee of the Department of Education (DOE), executed a settlement agreement with the DOE to resolve complaints of age and race discrimination that she had filed with the EEOC.  *Id.*  When that plaintiff believed the DOE had breached the settlement agreement, she filed a complaint in District Court seeking $210,000 in damages and various forms of equitable relief.  *Greenhill*, 482 F.3d at 571.  The Court of Appeals affirmed the District Court's dismissal of the plaintiff's claim for lack of jurisdiction noting that the court did not have jurisdiction over a breach of contract claim where the plaintiff sought more than $10,000.  *See* 28 U.S.C. § 1346(a); *see also Rochon v. Gonzales,* 438 F.3d

---

[4]Although the plaintiff also mentions in her Prayer for Relief other relief sought, that relief is of a general, conclusory nature, i.e., "all other benefits under pertinent personnel management regulations."  Further, as to her request for the restoration of annual leave, this is still in effect a claim for monetary damages.  Because the plaintiff no longer works for the government, any restored annual leave would be paid to her in a lump sum payment so that the request for restoration of annual leave is equivalent to a request for money for that leave.

1211, 1214 (D.C. Cir. 2006)(a claim for breach of Title VII settlement agreement is a contract claim under the Tucker Act); *Brown v. United States*, 389 F.3d 1296, 1297-98 (D.C. Cir. 2004)(district court lacked jurisdiction over Title VII claims that depended on the finding of a breach of settlement agreement); *see generally Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986).   Because the plaintiff is seeking money damages far more than $10,000, i.e., $1,000,000, this Court does not have jurisdiction over the plaintiff's breach of settlement agreement claim.[5]

**C.  This Court Is Without Jurisdiction Over Plaintiff's Constitutional Challenges And They Are Without Merit.**

Similarly, the plaintiff's Constitutional claims should be dismissed for lack of jurisdiction.  The plaintiff raises a series of Constitutional claims, i.e., (1) that she was not given a right to respond to the proposed removal in violation of her due process rights, Complaint, ¶ 21, (2) that she was denied the right to cross examine witnesses in connection with her proposed removal before being removed in violation of her right to confront witnesses, Complaint ¶¶ 22-23, and (3) terminating her from her job was a violation of her Constitutional rights.  Complaint, ¶¶ 25 and 28.   As with the contract claim, the plaintiff's Constitutional claims should be dismissed because there is no waiver of sovereign immunity as to these claims.

No statute, including the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, (hereinafter "FTCA"), waives the federal government's immunity from suit for any constitutional torts that may be committed by its employees.  *See* 28 U.S.C. §§ 2679(b)(1) and (b)(2); *Kline v.*

---

[5]It is recognized that the Court does have jurisdiction over the plaintiff's Title VII removal claim.  Even if the breach of agreement claim is dismissed, this Court would retain jurisdiction over the plaintiff's Title VII claim arising from her removal.  *See Murthy v. Vilsack*, ____ F.3d _____, 2010 WL 2540389 (D.C. Cir. May 12, 2010).

*El Salvador*, 603 F. Supp. 1313, 1317 (D.D.C. 1985); *see also Laswell v. Brown*, 683 F.2d 261

(8th Cir. 1982), *cert. denied*, 459 U.S. 1210 (1983); *Birnbaum v. United States*, 588 F.2d 319,

327-28 (2d Cir. 1978).  The FTCA exposes the United States to liability only "under

circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).

Courts have interpreted this phrase to mean that only claims under state law are cognizable under

the FTCA.  Thus, the United States has not rendered itself liable for constitutional tort claims.

*FDIC v. Meyer*, 510 U.S. 471, 485-86 (1994); *see Kauffman v. Anglo-American School of Sofia*,

28 F.3d 1223 (D.C. Cir. 1994).  Thus, the FTCA does not provide a basis for the Court's

jurisdiction of these Constitutional claims.[6]

     Additionally, there is no waiver of sovereign immunity for such actions under *Bivens v.*

---

[6]Moreover, the plaintiff's claim is barred under the FTCA because she has not asserted that she has exhausted the necessary administrative remedies that are a prerequisite to bringing an FTCA claim in any event.  Claimants must first exhaust their administrative remedies before bringing suit in federal court under the FTCA. *McNeil v. United States*, 508 U.S. 106,113 (1993) (upholding the district court's dismissal of a civil action because the plaintiff brought suit in district court before receiving a denial of his administrative claim from the proper agency); *see also Zhengxing v. U.S. Patent & Trademark Office*, 579 F.Supp.2d 160, 164 (D.D.C.2008) (noting that "exhaustion of administrative remedies is required for the court to have subject matter jurisdiction" over FTCA claims).  Absent full compliance with the conditions placed upon the FTCA's limited waiver of that immunity, the Court lacks jurisdiction to entertain any tort claims against the United States.  *GAF Corp. v. United States*, 818 F.2d 901, 904 and n.86 (D.C. Cir. 1987).  One such condition of the FTCA provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied...."  28 U.S.C. § 2675(a); *see GAF Corp.*, 818 F.2d at 904 n. 7.  This requirement is jurisdictional and cannot be waived.  *Hohri v. United States*, 782 F.2d 227, 245-46 (D.C. Cir. 1986), *reh. denied*, 793 F.2d 304 (D.C. Cir. 1987), *rev'd on other grounds sub nom., United States v. Hohri*, 482 U.S. 64 (1987); *see also Adair v. England*, 183 F. Supp.2d 31, 46 (D.D.C. 2002).

*Six Unknown Federal Agents*, 403 U.S. 388 (1971), against the government.[7]  *Bivens*-type

actions against the United States and its agencies "are routinely dismissed for lack of subject

matter jurisdiction."  *Keene Corporation v. United States*, 700 F.2d 836, 845 n.13 (2d Cir.),

*cert. denied*, 464 U.S. 864 (1983).  *See also Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) (no

action against a federal agency for due process violation).  To the extent the plaintiff asserts

Constitutional claims for damages against the United States, such claims must be dismissed for

lack of subject matter jurisdiction.

The plaintiff has already been accorded an adequate remedy pursuant to Title VII.  Under

Title VII, federal employees may bring a discrimination or retaliation suit against a government

agency when they believe their civil rights have been violated as a result of their membership in

a protected class or participation in protected activities.  It is well established that a federal

employee may not pursue constitutional tort claims when the employee has meaningful statutory

remedies available to him or her.  *Bush v. Lucas,* 462 U.S. 367, 390 (1983); *McDowell v.

Cheney*, 718 F.Supp. 1531, 1540-41 (M.D. Ga. 1989).  Title VII provides the plaintiff a

meaningful remedy for claims of discrimination or retaliation in federal employment.  As a

result, she is foreclosed from pursuing her other "Constitutional" claims against the Navy.

*Brown v. General Services Administration*, 425 U.S. 820, 828-829 (1976).  *See also Bush*, 462

U.S. at 390.  There is no jurisdictional basis for the plaintiff's separate "Constitutional" claims.

They should be dismissed.  *See generally  Spagnola v. Mathis*, 859 F.2d 223, 228-29 (D.C. Cir.

1988)(no constitutional claim in the federal employment context even where CSRA did not

---

[7]In *Bivens*, the Supreme Court recognized an action against individual Federal
employees, but not the agencies or the United States for violation of Constitutional rights in
limited circumstances.

provide complete redress).

In any event, the plaintiff was accorded the process to which she was due under the applicable authorities. The Civil Service Reform Act provided the plaintiff an avenue to review the Navy's removal action through an appeal to and hearing before the MSPB. *See generally* 5 U.S.C. § 7701; *Delong v. Dep't of HHS*, 264 F.3d 1334 (Fed. Cir. 2001). The plaintiff was afforded an opportunity to respond to her proposed removal in writing and orally, which she did. Attachments (i), (j) and (k), Decision on Removal, Exhibit 20.

Additionally, after she was removed, she had the opportunity to and did appeal to the MSPB, which conducted a hearing. Appeal, Exhibit 21; MSPB Order, Exhibit 22; Hearing Transcripts, Exhibits 25 and 26. At that hearing, the plaintiff had the opportunity to present witnesses, to testify and to confront and cross examine witnesses. Hearing Transcripts, Exhibits 25 and 26. The Navy's action complied with the regulations and authorities governing removals. The plaintiff's "Constitutional" claims are without merit and should be dismissed.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED IN THE NAVY'S FAVOR REGARDING PLAINTIFF'S CLAIM OF DISCRIMINATION AND REPRISAL FOR HER UNACCEPTABLE PERFORMANCE RATING AND REMOVAL.

### A. Applicable Legal Principles

"Title VII . . .does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999), quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986), *cert. denied*, 479 U.S. 1066 (1987). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), quoting *Milton v. Weinberger*, 696 F.2d 94,

100 (D.C. Cir. 1981).

A plaintiff must demonstrate discrimination and may rely on direct or circumstantial evidence to meet that burden.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-102 (2003). Where, as here, the record contains no direct evidence of discrimination, allegations of race discrimination and retaliation under Title VII and age discrimination under the ADEA are all analyzed under the all too familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006) (ADEA claims); *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir.1999) (Title VII claims); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997) (§ 1981 claims). Under that framework, the plaintiff has the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of race or age discrimination, the plaintiff must show (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006).  For purposes of a discrimination claim, to establish an adverse employment act, the plaintiff must demonstrate that she has suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."  *Brown v. Brody*, 199 F.3d at 457.

The plaintiff's retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework as her discrimination claims. *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005); *Alexander v. Tomlinson*, 507 F. Supp.2d 2, 3 and 17 (D.D.C. 2007).

To establish a prima facie case of retaliation, plaintiff must show (1) that she engaged in protected activity; (2) that she was subjected to adverse action by her employer; and (3) that there was a causal link between the adverse action and the protected activity. *Id*.  For purposes of retaliation, a "materially adverse action is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Porter v. Shah*, 606 F.3d 809, 817-818 (D.C. Cir. 2010), quoting *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009).

If the plaintiff succeeds, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. *See McDonnell Douglas*, 411 U.S. at 802.   The defendant's burden is only one of production; it "need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If the defendant is successful, then "the *McDonnell Douglas* framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [is] discrimination vel non." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142-43 (2000) (internal citations and quotation marks omitted). At that point, plaintiff has the burden of persuasion to show that defendant's proffered nondiscriminatory reason was not the true reason for the employment decision. *Burdine*, 450 U.S. at 256,; *see also Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir.) ("Although the McDonnell Douglas framework shifts 'intermediate evidentiary burdens' between the parties, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' "), *cert. denied*, 540 U.S. 881 (2003), quoting *Reeves*, 530 U.S. at 143.

 As explained recently by the D.C. Circuit, "where an employee has suffered an *adverse employment action* and an employer has asserted a legitimate, non-discriminatory reason for the

decision, the district court need not- and should not- decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex or national origin?" *Brady v. Office of the Sergeant of Arms, United States House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008).[8]   At this point, in deciding whether a reasonable jury could infer discrimination or retaliation at this stage, the Court should look at all the evidence, including not only the prima facie case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its actions. *Porter*, 606 F.3d at 813, citing *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

"At this stage, if [plaintiff] is unable to adduce evidence that could allow a reasonable trier of fact to conclude that [defendant's] proffered reason was a pretext for discrimination, summary judgment must be entered against [plaintiff]." *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D. C. Cir.1997).  Pretext may be established "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "'It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair,

---

[8] *See Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) ("As the Supreme Court has explained, once a defendant has proffered such a nondiscriminatory explanation, it has 'done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case'").

or sensible.  He must show that the explanation given is a phony reason.' " *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir.1996) quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir.), *cert. denied*, 512 U.S. 1205 (1994). "Once the employer has articulated a non-discriminatory explanation for its action, ... the issue is not the 'correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers.' " *Id.*, quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992).  As clearly established, a district court judge does not "reexamine[s] an entity's business decisions." *Id.* Further, a plaintiff who creates a genuine issue of material fact as to whether the employer has given the real reason for its employment decision will [not] always be deemed to have presented enough evidence to survive summary judgment.  *See Desmond v. Mukasey* , 530 F.3d 944, 963 (D.C. Cir. 2008); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir.1998) (en banc). Indeed, "there will be instances where . . . the plaintiff has . . . set forth sufficient evidence to reject the defendant's explanation, [yet] no rational factfinder could conclude that the action was discriminatory." *Id.* quoting *Reeves*, 530 U.S. at 148.

Here, plaintiff alleges that her removal from federal service was based on age discrimination and was in retaliation for filing EEO complaints alleging race and age discrimination.  *Id.*   Contrary to the plaintiff's claims, the Navy had legitimate, non-discriminatory reasons for removing the plaintiff from federal service, i.e., her unacceptable performance over a sustained period of time, nearly two years.  The plaintiff, having already had an opportunity to discovery and having had an administrative hearing before the MSPB on this issue has failed to show any indicia of pretext.  The MSPB found that the plaintiff had failed to do so.  Instead, after a full evidentiary hearing, the MSPB concluded, as explained below, that

the Navy's reasons for removing the plaintiff were legitimate and non-discriminatory.  There is

no genuine dispute as to any material facts and the plaintiff cannot establish any.  Summary

judgment should be granted for the Navy.

**B.  Summary Judgment Should Be Granted In Favor of the Navy As To The Plaintiff's Claims Arising From Her Removal Because There Were Legitimate, Non-Discriminatory Reasons for Her Removal And Her 2008 Rating.**

The Navy's removing the plaintiff from service was based on the plaintiff's unacceptable

performance rating over a sustained period.  The Navy carefully explained and documented that

unacceptable performance throughout the period, counseling the plaintiff, supervising her and

providing her guidance and training in an attempt to improve her performance to no avail.  Thus,

its actions were reasonable and should be upheld.

The Proposed Notice of Removal explained the reasons the Navy concluded that the

plaintiff's performance was unacceptable and provided documentation to support these claims.

Exhibit 19 and attachments thereto.  Following issuance of that notice, the plaintiff had an

opportunity to submit a written reply and provide an oral reply which she did.  Attachments (i),

(j) and (k) to Decision on Removal, Exhibit 20.  Those documents were considered when the

Navy made its final decision removing her. *Id*.  Subsequently, at the MSPB hearing, the

plaintiff's supervisors for each of those periods testified regarding her performance as did the

officials involved in proposing and deciding on her removal.  Hearing Transcripts, Exhibits 25

and 26.  At that hearing, the plaintiff had an opportunity to cross examine those witnesses and

testify on her own behalf.  *Id*.

1. <u>January 2007 - September 2007 Unacceptable Performance</u>.

The documents and testimony clearly establish legitimate, non-discriminatory reasons for the plaintiff's removal, i.e., that her performance was unacceptable for the rating period ending September 2007, for the rating period ending September 2008, and for the interim period that ended March 2009. First, as to the September 2007 assessment, she was rated "1-unacceptable." Performance Rating, attachment 1, Proposed Removal, Exhibit 19. As indicated therein, the plaintiff completed only four of the eight tasks for her assigned audits. *Id.* And, as to the four tasks completed, she did not meet the deadline for deliverables. *Id.; see also* Hearing Transcript, Nov. 9, Exhibit 25, at 61-66. The other four tasks were either incomplete or completely ignored. *Id*

Her supervisor, Mr. Wagoner, testified that she required a degree of supervision exceeding that typically required for an auditor of her experience. MSPB Hearing Transcript, 11/9/09, at 45-49, Exhibit 25. As he explained, she was required to do a basic work paper, which is a document that is basic to every audit. Nov. 9 Transcript at 49-53, Exhibit 25. She had been assigned a paper and could not complete it. *Id.* After a series of email communications between the plaintiff and Mr. Wagoner, they met to discuss the problem. *Id.* Mr. Wagoner explained the basics of writing the papers and what was needed in the paper and the scope of methodology. *Id.* at 50-51. Despite the plaintiff being a senior auditor, having over 20 years experience and receiving one-on-one guidance from her supervisor, she was unable to complete this task. *Id.* at 52-53. Instead, it was reassigned to a junior auditor, who was a GS 7 with two years' experience, who was able to start from scratch and complete the task. *Id.* at 53.

Additionally, although the plaintiff was a Team Leader with over twenty years'

experience, when Mr. Wagoner attempted to assign her team leader responsibilities, such as

reviewing work papers of other, less experienced team members, she refused. *Id*. at 46.

Throughout the time Mr. Wagoner supervised the plaintiff he gave her written and verbal

guidance on how she could improve her work performance. *Id*. at 54.  Mr. Wagoner conducted a

mid-term assessment with the plaintiff. *Id*. at 66.  At that time, he went through each objective

and discussed her deficiencies and how she could improve. *Id*.  Further, at one point, he met

with her regarding some point papers that were due, or past due. *Id*.  The plaintiff actually

advised that as to two point papers, she was not going to do them. *Id*. at 55.

    2.  <u>September 30, 2007 - October 1, 2008 Unacceptable Performance.</u>

     The plaintiff's performance for the period October 1, 2007 through September 30, 2008,

was also unacceptable.  The plaintiff's performance rating indicated that the plaintiff did not

meet expectations for audit planning in that she missed milestones that delayed the utilization

draft.  Performance Rating, attachment (2) at 8, Exhibit 19.  In addition, the plaintiff did not

show the expected cooperation and teamwork and leadership work behaviors. *Id*.  She also

missed deadlines for submitting work papers. *Id*.

     The plaintiff also failed to achieve the audit executive objective.  She did not gather

sufficient and appropriate evidence to support her conclusions for 3 of 6 projects. *Id*.  She did

not maintain audit documentation to support her judgments and conclusions and her work papers

for the first 3 projects were not prepared in accordance with the Naval Audit handbook. *Id*.  Her

then supervisor, Marjorie Poynor, testified at the MSPB hearing as to the poor quality of the

plaintiff's work papers.  Hearing Transcript, Nov. 9, Exhibit 25, at 112-115.  The papers had to

be sent back for revisions for missing elements that are requirements of the Naval Audit

handbook.  *Id.*

In at least some of her work, she failed to properly analyze the project and identify scoping issues.  *Id.*   Significantly, for at least one project, the plaintiff failed to document how she validated the size of the facilities that were part of the project.  Hearing Transcript, Exhibit 25, at 117-126.  The plaintiff was assigned an audit of a potential construction project.  But, the plaintiff did not validate the Basic Facility Requirement (BFR) by comparing the project scope to applicable guidance as to needed space.  *Id.*  She failed to identify potential over scoping issues that were apparent.  *Id*.  In one instance, the primary facilities were never validated. Hearing Transcript, Exhibit 25 at 123.

In addition, the plaintiff did not show significant cooperation.  Performance Rating, attachment (2), Proposed Removal, Exhibit 19.  As explained in her appraisal and in a separate memorandum, during a trip to an audit site, it was reported by the officer at the site that the plaintiff had been rude and unprofessional in a meeting.  *Id*.; *see also*, Memo for Record, Exhibit 15.

During that same trip, another auditor offered the plaintiff assistance.  Performance Rating, attachment (2), Proposed Removal, Exhibit 19.  The plaintiff became defensive, argumentative and rude in her tone and manner to the auditor.  The supervisor had to intercede because it was disruptive.  *Id*.  On a second occasion, when an auditor pointed out an error to the plaintiff, she became extremely agitated, raised her voice and began arguing.  The supervisor had to again intercede. *Id.*

Further, during that same rating period in October, 2008, the plaintiff had a confrontation with a fellow employee.  Attachment 2 to Notice of Final Determination of Breach, Exhibit 8.

The plaintiff yelled at her colleague in a loud, aggressive and intimidating tone of voice and accused him of being involved in a situation where the plaintiff had been advised that she acted unprofessionally to a team member during an audit.  *Id.*

3. October 2008 - March 2009 Interim Unacceptable Performance

Finally, as to her performance for the period of October 1, 2008, to April 24, 2009, which was documented by the interim performance assessment she received, her supervisor and the person who proposed her removal, showed that the plaintiff's performance on the "audit execution" objective was still unacceptable.  Attachment (3) to Proposed Removal, Exhibit 19. Her then supervisor and the proposed removing official, James Plummer testified at the hearing regarding her unacceptable performance during that period.  For instance, he described some tasks to which she had been assigned on an audit that could have been performed by a junior auditor, but which she could not complete easily.  Hearing Transcript, Exhibit 25, at 200-207. She failed to meet two of three deadlines and needed frequent direction.  In the interim rating that he prepared he noted that she was not performing at the senior auditor level.  She was assigned a spreadsheet to list all projects and identify those for a particular activity which she failed to complete.  *Id.* at 205.

The plaintiff required more frequent direction than commensurate with her grade level and years of experience.  Interim Performance Appraisal, attachment (3) to Proposed Removal, Exhibit 19.  During the rating period, she was assigned five routine tasks and she was either late or failed to complete these projects.  Hearing Transcript, Exhibit 25, at 210-211.  These were projects that a junior auditor would be expected to do.  *Id.* at 211-215.  In addition, during a January, 2009, meeting the plaintiff became disruptive and behaved unprofessionally. *Id.*; *see*

*also* Hearing Transcript at 208-210.

In addition to counseling and supervision, the Navy provided the plaintiff with training. In 2009, they sent the plaintiff to time-management and audit evidence and documentation training. See attachment (j) to Notice of Removal, Exhibit 20. Despite that, in her interim rating in 2009, for the period October 1, 2008 through September 30, 2009, the same deficiencies were noted. Attachment 3 to Proposed Removal, Exhibit 19.

The plaintiff herself acknowledged and validates her supervisor's statements. During her deposition, when asked if she conducted audits referring to the Naval Audit Handbook and when asked if audits were supposed to comply with the Naval Audit Handbook, she replied that she conducts an audit the way she's been doing them for years. Townsend Deposition, Exhibit 24 at 17-18. In fact, she would not even agree that audits should be done in compliance with the handbook, saying she did not know. *Id*. at 15. Finally, the plaintiff admitted that she did not use the handbook, saying that "she didn't need to." *Id*. at 116-117.

She also was unfamiliar with her work and details of an audit she conducted. *Id*. at 27-28. Significantly, she admitted that she would not follow directions with which she disagreed, saying that they were not going to tell her to do as they say. *Id*. at 73. She also admitted that her supervisors had raised concerns with her, indicating that they had told her she was not respectful to audit activities. *Id*. at 136.

The plaintiff has failed to and cannot provide evidence sufficient to establish pretext. Indeed, in her response to the notice of proposed removal, she did not necessarily deny the events but simply stated that she believed she did her job. Such personal claims about the quality of her work, are conclusory and insufficient to reach a genuine issue of material fact to

-35-

preclude summary judgment.  *See Simmons v. Cox*, 495 F. Supp.2d 57, 64 (D.D.C.

2007)(plaintiff's conclusory statements regarding quality of work insufficient to overcome

proffered, documented reason for removal), *aff'd.*, 2008 WL 2516463 (D.C. Cir. Feb. 25, 2008),

citing *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999)(conclusory statements are not

accepted as true in summary judgment proceedings); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.

Cir. 1993)(explaining that a plaintiff must support allegations of the quality of her work with

facts on the record).

        Further, there is no indication that any other individual similarly situated was treated

differently. Although in *Brady*, 520 F.3d at 494,  the Court stated that where there is an adverse

employment action and the employer presents a legitimate reason, the test for a *prima facie* case

becomes irrelevant, the D.C. Circuit has, nonetheless, recognized that one of the elements to

consider in determining whether the agency's decision was a pretext for discrimination is to look

at the strength of the *prima facie* case.  *Jones v. Bernanke*, 557 F.3d at 677.  Here, the plaintiff

has never pointed to anyone else similarly situated who was treated differently.  The plaintiff

does not point to any individual who for two consecutive performance cycles was found to have

unacceptable performance but, nonetheless, was not removed.  As such, she has failed to

demonstrate one of the elements of a *prima facie* case, which substantially weakens the strength

of that case.  *See generally Alexander v. Tomlinson*, 507 F. Supp.2d 2, 15-17 (D.D.C. 2007).

This certainly undercuts her claims of discrimination.

        As to retaliation, it is significant to note that although she had prior EEO activity, the

supervisors involved in her removal were not the supervisors involved in her prior cases.

Indeed, as Mr. Wagoner testified, he was not involved in her prior EEO activity.  Hearing

Transcript, Exhibit 25, at 71-72.  In fact, it was the plaintiff who told him about it.  In response, Mr. Wagoner advised the plaintiff that that was not important; instead, he wanted her with her experience to help the newer people move up and be able to do their jobs.  Hearing Transcript, Exhibit 25 at 72-73.  Similarly, Ms. Poynor said she was aware of the plaintiff's claims but was not the object of them and did not know any specifics about them.  Hearing Transcript, Exhibit 25 at 130-131.  Because supervisors were not the subject of the prior complaints, the plaintiff has not shown that they would have a motive to retaliative against her.  *See Vickers v. Powell*, 493 F.3d 186, 197 (D.C. Cir. 2007)(supervisor not involved in prior incident does not have motive to discriminate).

In *Brady*, in response to the employer's articulated reason for demoting the plaintiff at the summary judgment stage, i.e., that there had been a particular incident that indicated the plaintiff had violated the office's sexual harassment policy, the plaintiff's only argument for discrediting the reason was to deny that the incident occurred and to argue that it's the jury's job to decide factual and credibility questions of this kind.  The Court rejected the plaintiff's argument.  As stated by the Court, the question is not whether the incident occurred.  The issue is whether the employer honestly and reasonably believed that the underlying incident occurred.  *Brady*, 520 F.3d at 288-289.  The plaintiff has not and cannot produce evidence that the reason for her removal was based on her age or was in retaliation for her prior EEO activity.  *See Ginger v. District of Columbia*, 527 F.3d 1340, 1345-46 (D.C. Cir. 2008) (holding that the plaintiffs failed to raise a genuine issue of fact regarding the defendant's non-discriminatory justification because they "adduced no evidence whatsoever of a causal link between race" and the alleged adverse actions), *cert. denied*, 129 S.Ct. 930 (2009).  *See also Baloch v.*

*Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008)(non-retaliatory reasons for reassignment not pretext); *Alexander*, 507 F. Supp.2d at 16-17 (legitimate, non-discriminatory reason for removal for excessive leave).

All in all, over a period of three years, the plaintiff had three different supervisors.  Each of these supervisors noted her failure to meet deadlines, her failure to follow procedures for performing audits, and her uncooperative attitude.   Throughout this period, the plaintiff received constant feedback, counseling and training to no avail.  There were legitimate, non-discriminatory reasons for her removal which the plaintiff cannot rebut.  Summary judgment should be granted in the Navy's favor.

**C.  Summary Judgment Should Be Granted As To The Plaintiff's 2008 Rating And The Plaintiff's Hostile Work Environment Claim Should Fail.**

To the extent that the 2008 EEO claim is actually a separate claim, that claim should be denied.  As already explained, there were legitimate, non-discriminatory reasons for the rating due to eh plaintiff's unsatisfactory performance.  Summary judgment should be granted in the Navy's favor.

2.  The 2008 Rating Does Not Constitute a Hostile Work Environment.

Further, because initially the plaintiff in bringing her EEO claim about the 2008 rating referenced a claim of hostile work environment, any such claim should also fail because the facts do not establish a *prima facie* case of hostile work environment.  EEO Complaint, Exhibit 12.  To prevail on a hostile work environment claim, a plaintiff must show that the defendant "subjected him to 'discriminatory intimidation, ridicule, and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment.' " *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir.), *cert. denied*, 549 U.S. 993

(2006), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *see also Rattigan v. Gonzales*, 503 F. Supp.2d 56, 78 (D.D.C. 2007); *Alexander v. Tomlinson*, 507 F. Supp.2d 2, 22-23 (D.D.C. 2007).  Whether or not the alleged actions taken against the plaintiff are sufficiently hostile is subject to an objective standard.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris*, 510 U.S. at 21.

To establish a prima facie case of a hostile work environment, the plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her protected status; (4) the harassment materially affected a term, condition, or privilege of employment; and (5) there is a basis for imputing liability to the employer. *See, e.g., Smith v. Jackson,* 539 F. Supp. 2d 116, 137 (D.D.C. 2008); *Brooks-Miller v. England*, 495 F. Supp. 2d 197, 201 (D.D.C. 2004).   As stated by the Court in *Rattigan*, 503 F. Supp.2d at 78, a hostile work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *see also Harris*, 510 U.S. at 21; *Nurriddin v. Bolden*, 382 F. Supp.2d 79, 106 (D.D.C. 2005), *aff'd.,* 222 Fed. Appx. 5 (D.C. Cir. April 16, 2007), *cert. denied*, 552 U.S. 1243 (2008).  Further, "the key terms, then, are 'severe,' 'pervasive,' and 'abusive,'" because "not just any offensive or discriminatory conduct rises to an actionable hostile work environment." *Nurriddin,* 382 F. Supp.2d at 106-107.

To determine whether a work environment is sufficiently hostile to be actionable, a court

should consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct;

3) whether the conduct is physically threatening or merely offensive; and 4) whether the conduct

unreasonably interferes with the employee's performance.  *Faragher v. City of Boca Raton*, 524

U.S. 775, 787-88 (1998).  "These standards for judging hostility are sufficiently demanding to

ensure that Title VII does not become a 'general civility code.'  Properly applied, they will filter

out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of

abusive language, gender-related jokes, and occasional teasing.'"  *Nurriddin*, 382 F.Supp.2d at

106-107, quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law, 175

(1992); *Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("simple teasing,

offhand comments, and isolated incidents (unless extremely serious)" are insufficient).  To

determine whether a particular work environment is hostile, courts must look at " 'all the

circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." ' *Faragher*, 524 U.S. at 787-88 quoting

*Harris*, 510 U.S. at 23.

  Further, Title VII does not provide a cause of action for the "ordinary tribulations of the

workplace." *Rattigan*, 503 F. Supp.2d at 79, quoting *Faragher*, 524 U.S. at 788.  Not everything

that makes an employee unhappy is actionable. *Rattigan*, 503 F. Supp.2d at 79, citing *Jones v.

Billington*, 12 F. Supp.2d 1, 13 (D.D.C. 1997), aff'd., 1998 WL 389101 (D.C. Cir. June 30,

1998).  Instead a hostile work environment claim must be based on incidents comprising "one

unlawful employment practice" of intimidation, insult and ridicule that pervades the plaintiff's

day-to-day working life. *Rattigan*, 503 F. Supp.2d at 79.  Isolated or sporadic incidents, such as

the use of abusive language, are not actionable.  *See Oncale*, 523 U.S. at 80; *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

More important,  hostile work environment cases do not include personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. *Nurriddin*, 382 F. Supp.2d at 107-108.  Otherwise, the federal courts will become a court of personnel appeals.  *Id*., citing *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir.2002).  Thus "to sustain a hostile work environment claim ... [plaintiff] must produce evidence that she was discriminated against because of her [status]."  *Nurriddin*, 382 F. Supp.2d at 107-108; *see also Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir.)(hostile work environment claim failed where insufficient evidence that alleged harassing behavior was motivated by discrimination), *cert. denied*, 528 U.S. 874 (1999); *Jones v. Billington*, 12 F.Supp.2d at 12 (hostile work environment claim failed where plaintiff had "not demonstrated that any of the conduct of which he complains was related to his race, or that his workplace was permeated with racially discriminatory behavior").

Here, the plaintiff's claim regarding her 2008 performance rating does not establish an objectively hostile work environment.  First, the action is not a series of actions.  To the extent it can be argued that the events and incidents on which the plaintiff's supervisor relied are the series of events on which she is relying, those are not severe and pervasive.  They are a number of isolated incidents throughout a year's period, in none of which hint at any connection to the plaintiff's status, age or race.  More important, the nature of the actions about which she complains are the normal work place issues that arise regarding performance and completing tasks.  There were no offhand remarks or comments much less disparaging remarks based on

age, race or her prior EEO activities.

In *Nurriddin,* 382 F. Supp.2d at 106-108, the plaintiff complained about common work place events, alleging that his superiors "passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, refused him a window cubicle, removed some of his duties, and denied his requests to travel or otherwise failed to provide support for his work with staffing and funding." *Id.* The plaintiff also alleged that "management opposed his career advancement in more direct ways, including the denial of a noncompetitive promotion, denial of a within-grade increase, and opposition to his transfer to another office or detail assignment." *Id.* The Court found that these normal workplace events did not constitute a hostile work environment.

Similarly in *Singleton v. Potter*, 402 F.Supp.2d 12, 42-43 (D.D.C. 2005), the Court considered whether plaintiff's allegations regarding nine or so incidents, e.g., heightened workload and insensitive comments could constitute a hostile work environment. The Court held that the incidents the plaintiff cited were infrequent discomfort at work due to normal job conditions and there was no evidence of discriminatory animus such that it could be considered an abusive working environment.

The plaintiff, here, like the plaintiff in *Nurriddin*, is seeking to transform her challenges to discrete acts of alleged discrimination or retaliation into a hostile work environment claim by combining those events with a series of ordinary workplace difficulties. But "mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment." *Nurriddin,* 382 F.Supp.2d at 106-108, *citing Childs-Pierce v.*

*Utility Workers Union of America*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005), *aff'd* 187 Fed. Appx. 1

(D.C. Cir.  27, 2006).  Although a plaintiff "may have been genuinely offended at some of the

comments made to her, these are the type of offhand comments and isolated incidents that simply

do not amount to a discriminatory change in the terms and conditions of employment."  *Taylor v.*

*Chao*, 516 F.Supp.2d 128, 137 (D.D.C. 2007), *aff'd Taylor v. Solis*, 571 F.3d 1313 (D.C. Cir.

2009).

The plaintiff's complaints about her boss's critique of her performance, her being

counseled about her work place behavior and her job tasks are normal job condition complaints.

They do not rise to the level of an objectively hostile work environment based on discriminatory

animus.   There was no hostile work environment here.[9]

---

[9]The plaintiff's complaint regarding a hostile work environment contains a somewhat broad, vague description of what it is intended to include, i.e., "Defendant's agents, servants and employees caused a hostile work environment by manufactured conflicts. . .[s]uch as during a site visit I was falsely accused of arguing with a co-worker, disrupting team meeting/s, intimidating co-worker, and intimidating workers in a loud intimidating voice and disrespectful to activity personnel."  The plaintiff's allegations regarding hostile work environment appear to be broader and less defined than in her administratively filed complaint, which focused specifically on the 2008 evaluation.  To the extent the plaintiff is attempting to expand her claims and raise additional hostile work environment claims, her claims should fail because she has failed to exhaust her administrative remedies.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)("[c]omplainants must timely exhaust these administrative remedies before bringing their claims to court"), citing *Brown v. GSA*, 425 U.S. 820, 832-33 (1976). A failure to comply with the time limits bars a plaintiff's discrimination claim.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see also Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990).

**E.** **Should This Court Determine That the Breach of Agreement Claim Should Not Be Dismissed, Summary Judgment Should Be Granted As To This Claim.**

If the Court determines that it does have jurisdiction over the breach claim, summary judgment should also be granted as to this claim.  "To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *see also Citizens Fed. Bank v. United States*, 474 F.3d 1314, 1318 (Fed. Cir. 2007) (affirming award of damages to plaintiff and selecting as appropriate causation standard "substantial factor" or "but for" theory "depends upon the facts of the particular case and lies largely within the trial court's discretion"); *see generally In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir.1998) (elements of breach of contract claim are "formation of the contract and its breach"); *Hercules, Inc. v. United States*, 513 U.S. 417, 431 (1996) (to win this case, as in the most elementary breach-of-contract case, the companies must show that the Government made  promises, that the Government breached them, and that the foreseeable harm was a consequence), citing *Restatement (Second) of Contracts* §§ 346, 347, 351 (1979); 5 *A. Corbin, Contracts* §§ 997, 1001, 1002 (1964).

As already explained in the explanation of legitimate reasons and as set forth in the Navy's documentation in the determination of the breach, there was no breach because the plaintiff did not perform the conditions prerequisite to the Navy changing her rating.  *See also* Navy's Final Determination, Exhbit 8, and EEOC's Decision, Exhibit 9.  As stated in her rating for that period, October 2007 through September 2008, and as explained in supporting documentation, the plaintiff still continued to miss deadlines.  Additionally, statements from

three other employees verified that the plaintiff had a confrontation with a coworker in October, 2008 in which she approached an employee in a loud, aggressive and intimidating manner and exclaimed "you're going to court." Exhibit 8.   The plaintiff's behavior was unprofessional and improper and consisted of raising her voice.  Exhibit 8.

The EEOC's Office of Federal Operations (herinafter "OFO") considered these claims and concluded that it was the plaintiff that breached the agreement not the Navy.   The Navy did not breach the agreement.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Navy respectfully requests that the Court grant this motion and dismiss the plaintiff's claims and grant summary judgment in its favor.


Respectfully submitted,

RONALD C. MACHEN JR., DC Bar #447889
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
_____/s/_____
DARIA J. ZANE, DC Bar #412783
Assistant United States Attorney
555 4th Street, NW,  Room E4224
Washington, DC 20530
202/307-0372
daria.zane@usdoj.gov
FAX: 202/514-8780

OF COUNSEL:
Karen Nappo
Counsel, Secretariat Headquarters
Human Resources Office
Dep't of the Navy

DATE: July 19, 2010